# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF FLORIDA

### 1:10-cv-24106-Cooke/Bandstra

| | |
|---|---|
| Jonathan Corbett, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| | ) |
| United States of America, | ) |
| | ) |
| Defendant. | ) |
| _____ | ) |

## DEFENDANT'S MEMORANDUM IN SUPPORT
## OF MOTION TO DISMISS

### INTRODUCTION

In his Complaint, plaintiff seeks to permanently enjoin the standard procedure of the Transportation Security Administration (TSA) for screening airline passengers.  Specifically, plaintiff claims that TSA's use of Advanced Imaging Technology (AIT) machines and alternative pat-down procedures violates his rights under the Fourth Amendment.  As explained below, however, this Court lacks jurisdiction to hear plaintiff's claims.  Plaintiff bears the burden of establishing that this Court has jurisdiction over the subject matter of this action, and he cannot do so here.  TSA's current procedure for screening airline passengers was issued by order of the Administrator of TSA on September 17, 2010, in the form of a revised "Screening Checkpoint Standard Operating Procedure," in order to better secure the nation against the serious threat posed by terrorists who seek to blow up airplanes using nonmetallic explosives and weapons.  Under federal law, 49 U.S.C. § 46110, exclusive jurisdiction over such aviation and security-related orders of TSA lies with the court of appeals.  Plaintiff's claims therefore cannot proceed in this Court, and

his Complaint must be dismissed.

## BACKGROUND

I.   **STATUTORY AND REGULATORY FRAMEWORK**

   A.   *Federal Authority Over Aviation Security Systems and Passenger Screening*

Federal law prohibits conduct that is threatening or dangerous to airline security and safety, such as engaging in "aircraft piracy," 49 U.S.C. § 46502(a); interfering with the duties of a flight crew member or flight attendant, *id.* § 46504; and taking any action that poses an imminent threat to the safety of an aircraft or individuals on board, *id.* § 46318.  Further, it is a crime to have a concealed weapon, loaded firearm, or an explosive or incendiary device on one's person or in one's property while on board, or attempting to board, an aircraft.  *Id.* § 46505.

Following the terrorist attacks of September 11, 2001, Congress created TSA to better protect all modes of transportation, and specifically charged the Administrator of TSA with overall responsibility for civil aviation security.  49 U.S.C. § 114(d); 6 U.S.C. § 202(1).  As part of this responsibility, the Administrator of TSA, together with the Director of the Federal Bureau of Investigation (FBI), must "assess current and potential threats to the domestic air transportation system," including the "extent to which there are individuals with the capability and intent to carry out terrorist or related unlawful acts against that system and the ways in which those individuals might carry out those acts." 49 U.S.C. § 44904(a).  Recognizing the ever-changing nature of aviation threats, Congress required TSA and FBI to engage in a "continuous analysis and monitoring" of such security threats.  *Id.*  The Administrator of TSA is further charged with taking "necessary actions to improve domestic air transportation security by correcting any deficiencies" that are discovered through this continuous monitoring.  *Id.* § 44904(e); *see also* 49 U.S.C. § 44903(b).

To fulfill its responsibility for securing the nation's aviation system, TSA relies on multiple mechanisms and layers of defense. *See* Docket # 10-2 (Def.'s Memo in Opp. to Pl.'s TRO/PI Mot., Exh. A), Declaration of John S. Pistole (Pistole Dec.) ¶¶ 17, 33. For example, Congress requires that passengers be pre-screened by comparing passenger information to No-Fly or Selectee lists maintained by the federal government. 49 U.S.C. § 44903(j). Further, Congress has directed TSA to provide for "the screening of all passengers and property . . . before boarding," in order to ensure that no passenger is unlawfully carrying a dangerous weapon, explosive, or other destructive substance. *Id.* §§ 44901(a), 44902(a), 114(e). In this regard, Congress has mandated that TSA give high priority to deploying new technologies at airport screening checkpoints to detect "nonmetallic, chemical, biological, and radiological weapons, and explosives" on individuals and in their property, including such explosives that "terrorists would likely try to smuggle aboard." *Id.* § 44925(a). In June 2008, the Senate Appropriations Committee specifically acknowledged the importance of "emerging technologies at passenger screening checkpoints," including advanced imaging technologies which "provide an increased level of screening for passengers by detecting explosives and other non-metal objects that current checkpoint technologies are not capable of detecting." S. Rep. No. 110-396, 2008 WL 2502304, at *60 (2008). The Senate Committee expressed its desire that "funds for whole body imaging continue to be spent by TSA on multiple imaging technologies, including backscatter and millimeter wave." *Id.*

In carrying out its mandate to provide aviation security, TSA issues Standard Operating Procedures (SOPs) that apply to specific aspects of the security screening process, including checkpoint screening. Pistole Dec. ¶ 25. TSA's Screening Checkpoint SOP sets forth in detail the mandatory procedures that TSA screening officers must apply in screening passengers at all airport

checkpoints, and which passengers must follow prior to boarding an aircraft. *Id.* ¶¶ 25, 46; 49 C.F.R. § 1540.107(a). On September 17, 2010, the Administrator of TSA issued a newly revised Screening Checkpoint SOP, which had an implementation date of October 29, 2010. Pistole Dec. ¶¶ 25, 46.[1] This SOP includes the most recently updated procedures for detecting nonmetallic explosive devises and weapons, and it represents TSA's final decision directing the use of AIT machines, as well as the revised procedures for the pat-down. *Id.*[2] In line with specific congressional directives, and based on the latest intelligence as well as assessments of available technologies, TSA has introduced AIT scanners[3] as part of its multi-layered standard security

---

[1] The SOP itself is not being filed with this motion, because it constitutes Sensitive Security Information (SSI) pursuant to 49 U.S.C. § 114(r) and 49 C.F.R. parts 15 and 1520, and cannot be publicly released. Pistole Dec. ¶ 25 & n.1. SSI is "information obtained or developed in carrying out security under authority of the Aviation and Transportation Security Act," the disclosure of which has been determined, inter alia, to be detrimental to the security of transportation. 49 U.S.C. § 114(r). Pursuant to regulations, the following are all deemed SSI and thus may not be publicly released: TSA Security Directives or orders; the identities of individuals on the No Fly and Selectee Lists; and "Security screening information" including "[a]ny procedures . . . instructions, and implementing guidance pertaining thereto, for screening of persons . . . that is conducted by the Federal government or any other authorized person." 49 C.F.R. §§ 1520.5(b)(1)&(2), 1520.5(b)(9) (emphasis added), 1520.9. Defendants maintain that plaintiff's Complaint can be dismissed for lack of jurisdiction based on information that is in the public domain, including declarations. However, upon this Court's request, defendants can provide it the Screening Checkpoint SOP for *in camera, ex parte* review.

[2] The SOP has been revised over the years when TSA has made a final determination that a change to the uniform security screening procedures is necessary in carrying out its mission. Pistole Dec. ¶¶ 12-14. For example, in 2006, the SOP was formally revised to include the ban on liquids in carry-on luggage, following the liquid explosive terrorist plot regarding flights originating in the U.K. *Id.* ¶ 14.

[3] The two types of AIT machines that TSA has approved and directed for use in primary screening, via the Screening Checkpoint SOP, are known as "millimeter wave" (which use radio waves) and "backscatter x-ray" (which use very small amounts of x-ray) walk-through machines. Pistole Dec. ¶¶ 29-30.

procedure, which includes metal detectors, pat-downs, and other security measures.  *Id.*  ¶¶ 31, 33, 41.

When TSA deploys an AIT machine to a screening checkpoint, signs are also placed at the checkpoint to inform passengers of the use of the AIT machines prior to the passengers' screening. Pistole Dec. ¶¶ 28, 39.  This notice also advises passengers that they may decline AIT screening and opt to be screened by a pat-down instead.  *Id.*  The pat-down procedure has been revised by the Screening Checkpoint SOP to account for the latest intelligence regarding non-metallic threats.  *Id.* ¶¶ 44-46.

Passenger compliance with security procedures, including those directed by the Screening Checkpoint SOP, is a mandatory precondition for boarding and flying.  49 C.F.R. §§ 1540.105(a)(2) (prohibiting individuals from entering a secured or sterile airport area "without complying with the systems, measures, or procedures being applied to control access to, or presence or movement in, such areas."); 1540.107(a) ("No individual may . . . board an aircraft without submitting to the screening and inspection of his or her person . . . in accordance with the procedures being applied to control access to that area or aircraft . . . .");  *see also*  49 U.S.C. §§ 44901-44903.  If the Administrator of TSA determines that "a particular threat cannot be addressed in a way adequate to ensure . . . the safety of passengers and crew of a particular flight," he "shall cancel the flight or series of flights."  49 U.S.C. § 44905(b).

B.    *Special Review of Orders Related to Aviation Security*

Title 49 of the U.S. Code (covering Aviation Programs) contains a judicial review provision pertaining to "orders" by the Secretary of Transportation (or, in particular, Under Secretary of Transportation for Security) issued "in whole or in part" under Part A (Air Commerce and Safety)

or Part B (Airport Development and Noise) of Subtitle VII of Title 49, or subsection (l) or (r)[4] of 49 U.S.C. § 114.  *See* 49 U.S.C. § 46110(a).  Under this judicial review provision, a person "disclosing a substantial interest in [such] an order" may apply for review of the order by filing a petition in the U.S. court of appeals for the circuit in which he resides or in the Court of Appeals for the D.C. Circuit.  The court of appeals "has exclusive jurisdiction to affirm, amend, modify, or set aside any part of the order and may order the [Administrator] to conduct further proceedings." *Id.* § 46110(c).  TSA considers the SOP to be TSA's "final agency decision," which is "reviewable by a United States Court of appeals under 49 U.S.C. § 46110." Pistole Dec.  ¶¶ 25, 46.

## II.    FACTUAL BACKGROUND

Plaintiff identifies himself as a frequent air traveler who objects to TSA's use of AIT scanners and the revised pat-down procedure at airport security checkpoints.  Claiming that TSA's use of AIT scanners and pat-down procedures violates his Fourth Amendment rights, plaintiff seeks declaratory relief and a permanent injunction against use of either technique without probable cause or reasonable suspicion.  Compl. Prayer For Relief ¶¶ 1, 3.[5]  Plaintiff alleges that he "is opposed to the new scanning procedures because he feels that the violation of his privacy would be emotionally traumatizing." *Id*. ¶ 25.  Plaintiff claims that the AIT consists of "nude body scanners," *id*. ¶ 11, which "produce clear images of the nude body." *Id.* ¶ 10.  He further asserts that "there have been many reports" that the  "enhanced" pat-down  procedure goes "beyond touching, and [is] better described as prodding, squeezing, lifting, and twisting of the genitals, buttocks, and/or breasts." *Id*.

---

[4]  Although section 46110 refers to "subsection (1) or (s) of section 114," subsection (s) of section 114 was later renumbered as subsection (r).  *See* Pub. L. 110-161, Div. E, § 568(a).

[5]  Plaintiff seeks only injunctive and declaratory relief regarding the screening procedure; he does not seek monetary relief.  *See* Compl. Prayer for Relief ¶ 7.

¶ 14.  Plaintiff also alleges that TSA "has many other effective and less invasive options" for screening "available to it."  *Id.* ¶ 23.

In his complaint, plaintiff does not allege that he has gone through an AIT scanner or received a pat-down.  He claims to have three tickets departing within 30 days of November 16, 2010, but otherwise does not quantify how often he flies or that he has any other airline trips planned.  Compl. ¶ 24.  There is no evidence in the record of whether plaintiff traveled as planned or whether he encountered AIT scanners or pat-downs.

Plaintiff filed a motion for a temporary restraining order and/or preliminary injunctive relief, on November 16, 2010.  This motion is fully briefed and is pending a decision by the Court.

## STANDARD OF REVIEW

Federal courts "are tribunals of limited jurisdiction whose power to hear cases must be authorized by the Constitution and by Congress."  *Cappuccitti v. Directv, Inc.,* 611 F.3d 1252, 1256 (11th Cir. 2010) (citations omitted).  "As the Supreme Court has reminded us, 'the Court early in its history wisely adopted a presumption that every federal court is without jurisdiction unless the contrary affirmatively appears in the record.'" *United States v. Rojas,* 429 F.3d 1317, 1320 (11th Cir. 2005 (quoting *Delaware v. Van Arsdall*, 475 U.S. 673, 692 (1986)).  In other words, courts "may not overstep the limits on [their] jurisdiction and exercise power over disputes Congress has not given [them] authority to decide."  *Id.* (citing *Keene Corp. V. United States*, 508 U.S. 200, 207 (1993)). *See also City of Tacoma v. Taxpayers of Tacoma*, 357 U.S. 320, 336 (1958) (Congress "may prescribe the procedures and conditions under which, and the courts in which, judicial review of administrative orders may be had.").  "If there is any ambiguity as to whether jurisdiction lies with a district court or with a court of appeals," the ambiguity should be resolved "in favor of review by

a court of appeals." *Suburban O'Hare Com'n v. Dole*, 787 F.2d 186, 192 (7th Cir. 1986).

Defendants move to dismiss this action under Federal Rule of Civil Procedure 12(b)(1), on the ground that the Court lacks subject matter jurisdiction.  In deciding whether to grant a motion under Rule 12(b)(1), the Court may consider matters outside the pleadings, such as declarations or other documents.  *Smith v. GTE Corp.,* 236 F.3d 1292, 1299 (11th Cir. 2001); *McMaster v. United States*, 177 F.3d 936, 940 (11th Cir. 1999).[6]

## ARGUMENT

## PLAINTIFF'S COMPLAINT SHOULD BE DISMISSED BECAUSE JURISDICTION IS PROPER ONLY IN THE COURT OF APPEALS

Plaintiff's challenge to TSA's security screening procedures must be dismissed because the court of appeals have exclusive jurisdiction over such actions.  The Federal Aviation Act provides that orders issued under Part A ("Air Commerce and Safety") or Part B of Title 49, Subtitle VII, are subject to review only in the court of appeals.  Specifically, 49 U.S.C. § 46110(a) states, in relevant part:

> [A] person disclosing a substantial interest in an order issued by the
>  Secretary of Transportation ([or the Administrator of TSA, or the FAA])
> in whole or in part under this part [(part A)], part B, or subsection (l)
> or [(r)] of section 114 may apply for review of the order by filing a petition for
> review in the United States Court of appeals for the District of Columbia
> Circuit or in the court of appeals of the United States for the circuit in which
> the person resides . . . .

This section further states that the court of appeals have "exclusive jurisdiction to affirm, amend,

---

[6]  Because this court lacks jurisdiction over this action, as explained herein, there is no occasion to now review whether plaintiff has stated a claim upon which relief could be granted or the underlying merits of his claims, which defendants would properly contest in the court of appeals. *See University of South Alabama v. American Tobacco Co.,* 168 F.3d 405, 410 (11th Cir. 1999) ("Simply put, once a federal court determines that it is without subject matter jurisdiction, the court is powerless to continue.").

modify or set aside any part of [such an] order." *Id.* § 46110(c).

Thus, pursuant to section 46110, only circuit courts may consider challenges to final orders described in the statute, which include orders issued by FAA or TSA[7] concerning air commerce and safety, including aviation security. *See Green v. Brantley*, 981 F.2d 514, 519 (11th Cir. 1993).[8] If such a claim is presented in a district court, it must be dismissed for lack of subject matter jurisdiction. *See Gilmore v. Gonzales*, 435 F.3d 1125, 1133 (9th Cir. 2006) (district court lacked jurisdiction to review TSA directive requiring passengers to present identification or be subject to search), *cert. denied*, 549 U.S. 1110 (2007); *Merritt v. Shuttle, Inc.*, 245 F.3d 182, 187 (2d Cir. 2001) ("By its terms, Section 46110(c) precludes federal district courts from affirming, amending, modifying, or setting aside any part of such an order."); *Green,* 981 F.2d at 516 (district court lacked subject matter jurisdiction over claim challenging FAA order); *City of Rochester*, 603 F.2d 927, 939 (D.C. Cir. 1979) (affirming lower court's dismissal of challenge to FAA order for lack of subject matter jurisdiction).

The security screening procedure challenged here – *i.e.*, the Screening Checkpoint SOP,

---

[7] As quoted *supra*, the statue refers to "Under Secretary of Transportation for Security with respect to security duties and powers designated to be carried out by the Under Secretary." *See* 49 U.S.C. § 46110(a). When TSA was created, Congress appointed the Under Secretary of Transportation for Security as the head of TSA. 49 U.S.C. § 114(b)(1). In 2002, TSA was transferred from the Department of Transportation to the Department of Homeland Security. *See* 6 U.S.C. §§ 203(2), 551(d). Statutory references to the Under Secretary for Transportation Security are now deemed as referring to TSA and its Administrator. *See id.* §§ 552(d), 557; 49 C.F.R. § 1500.3 (stating that the Administrator of TSA is the Under Secretary of Transportation for Security). Accordingly, courts have universally recognized that section 46110 applies to orders issued by TSA. *See, e.g.*, *Gilmore v. Gonzales*, 435 F.3d 1125, 1132-34 (9th Cir. 2006), *cert. denied*, 549 U.S. 1110 (2007); *In re Sept. 11 Lit.*, 236 F.R.D. 164, 174 (S.D.N.Y. 2006) (characterizing the provision's application to TSA orders as being "without dispute").

[8] When *Green* was decided, the judicial review provisions at issue were codified at 49 U.S.C. App. § 1486 rather than 49 U.S.C. § 46110. "The statutes do not materially differ." *Ass'n of Citizens to Protect & Pres. the Env't. v. FAA*, 287 F. App'x 764, 766 n.3 (11th Cir. 2008).

which requires passengers to be screened via AIT machines or standard pat-downs – is an order that falls within section 46110's exclusive jurisdictional channel to the court of appeals.

*First,* the Screening Checkpoint SOP was issued by the Administrator of TSA "in whole or in part under" Title 49, Subtitle VII, Part A ("Air Commerce and Safety"), and pertains to "security duties and powers designated to be carried out by the [TSA Administrator]," thereby falling within the ambit of section 46110.[9] *See* 49 U.S.C. § 46110(a). Under 49 U.S.C. §§ 44901-44903 and 44925 (statutes within Part A), Congress requires TSA to provide for the screening of all passengers and property on passenger aircraft, and to prioritize the deployment of new technologies that can detect nonmetallic explosives at airport screening checkpoints. TSA regulations mandate that passengers comply with screening procedures before entering the "sterile area" of an airport or boarding an aircraft. 49 C.F.R. §§ 1540.107(a), 1540.105(a)(2); *see also* 49 U.S.C. §§ 44901-44903. To enforce these statutory and regulatory mandates, the Administrator of TSA issued the Screening Checkpoint SOP. Pistole Dec. ¶¶ 6, 11-14, 22, 25. The issuance of the Screening Checkpoint SOP is also plainly part of the "security duties and powers designated to be carried out by the [TSA Administrator]," as the TSA Administrator is explicitly charged with "carrying out chapter 449 [of Title 49], relating to civil aviation security, and related research and development activities," 49 U.S.C. § 114(d)(1), and with "screening operations," including "day-to-day Federal security screening operations for passenger air transportation and intrastate air transportation," *id.* § 114(e)(1).

*Second*, the Screening Checkpoint SOP constitutes an "order" under section 46110. "The

___

[9] Section 46110 encompasses orders issued in whole or in part under Title 49, Subtitle VII, Part A (49 U.S.C. §§ 40101 – 46507), Part B (49 U.S.C. §§ 47101-47533), and 49 U.S.C. § 114(l) or (r). *See* 49 U.S.C. § 46110(a).

term 'order' in this statute has been given expansive construction." *Atorie Air, Inc. v. FAA*, 942 F.2d 954, 960 (5th Cir. 1991) (citation omitted); *see also New York v. FAA*, 712 F.2d 806, 808 (2d Cir. 1983) ("[T]he term 'order' should receive a liberal construction.").  For an order to fall within the ambit of section 46110, it must be "final" and "the agency record must be adequate enough to support judicial review." *Green*, 981 F.2d at 519.  An order is final if it "impose[s] an obligation, den[ies] a right or fix[es] some legal relationship as a consummation of the administrative process." *Id.  See also Aerosource, Inc. v. Slater*, 142 F.3d 572, 578 (3d Cir. 1998) (an order is final if it "impose[s] an obligation, den[ies] a right, or fix some legal relationship"); *City of Alexandria v. Helms*, 728 F.3d 643, 646 (4th Cir. 1984) (same).  Although agency action must be "final" to fall under section 46110, it "need not be a formal order, the product of a formal decision-making process, or be issued personally by the Administrator." *Aerosource, Inc.*, 142 F.3d at 578; *see also Aviators for Safe & Fairer Reg., Inc. v. FAA*, 221 F.3d 222, 226 (1st Cir. 2000) (reviewing FAA notice that was not the product of notice-and-comment rulemaking); *Green,* 981 F.2d at 519 (letter from FAA office manager rescinding pilot certificate constituted final order).

The Screening Checkpoint SOP, and in particular the one issued on September 17, 2001 and implemented on October 29, 2010, meets both of these criteria.  It "mark[s] the consummation of the agency's decisionmaking process" because it is "not . . . of a merely tentative or interlocutory nature." *See Village of Bensenville v. FAA*, 457 F.3d 52, 68 (D.C. Cir. 2006) (quoting *Bennett v. Spear*, 520 U.S. at 177-78 (1997)).  It sets forth mandatory procedures that TSA personnel must apply in screening passengers, and which passengers must follow.  Pistole Dec. ¶ 6.  Thus, it is not "tentative, open to further consideration, or conditional on future agency action." *See City of Dania*

*Beach v. FAA*, 485 F.3d 1181, 1188 (D.C. Cir. 2007).[11]  Moreover, like prior revisions, the current SOP was issued only after TSA made a final determination that changes to the standard procedures were necessary to maximize security and minimize passenger inconvenience and invasiveness in response to evolving threats.  Pistole Dec. ¶ 25.  Accordingly, it represents the consummation of agency decisionmaking.  *Cf. Mass. v. U.S. Nuclear Regulatory Comm'n*, 878 F.2d 1516, 1519-20 (1st Cir. 1989) (noting that a relevant consideration in determining finality under the Hobbs Act is "whether the process of administrative decisionmaking has reached a stage where judicial review will not disrupt the orderly process of adjudication") (quoting *Port of Boston Marine Terminal Ass'n v. Rederiaktiebolaget Transatlantic*, 400 U.S. 62, 71 (1970)).

Similarly, the SOP established obligations and "fixes" a legal relationship.  *Green*, 981 F.2d at 519 (citing *Aeromar, C. Por A. V. Department of Transportation*, 767 F.2d 1491, 1498, *reh'g denied*, 773 F.2d 1239 (11th Cir. 1985)).  *Accord  Safe Extensions Inc. v. FAA*, 509 F.3d 593, 598 (D.C. Cir. 2007) (quoting *City of Dania Beach*, 485 F.3d at 1187).  The Screening Checkpoint SOP sets forth the rules which airline passengers must follow; if passengers do not comply with the procedures set forth in the SOP, by virtue of 49 C.F.R. §§ 1540.105 and 1540.107, they are not permitted to enter the "sterile area" of an airport or to board a plane.

Thus, when viewed against these standards, the Screening Checkpoint SOP constitutes an order that must be reviewed by a court of appeals under section 46110, because it represents a final

---

[11]  That the current SOP is a revised version of previous SOPs, and that it will, at some point, be superseded by an updated SOP, does not defeat the current SOP's status as a final order.  *Accord City of Dania Beach*, 485 F.3d at 1188-89 (holding that an FAA letter that "at the very least . . . provide[d] a new interpretation of [a] program in light of . . . changed circumstances" was a final order); *City of Alexandria v. Helms*, 728 F.2d 643, 646 (4th Cir. 1984) (holding that "the duration of the [agency] action . . . is not relevant to determining whether the action was final" under the predecessor to section 46110).

definitive statement of the agency's screening procedures and requirements at airport checkpoints. The SOP is not merely a draft or a proposal; rather, it sets forth the uniform standards and procedures that airport security screening officers must impose on air travelers, and thus it imposes an "obligation" upon all those affected. Indeed, at least one challenge to AIT has already been filed directly in the United States Court of appeals for the District of Columbia, pursuant to section 46110. *See EPIC v. Napolitano*, Case No. 10-1157 (D.C. Cir.).[12]

That the SOP is not publicly available is immaterial to its status as an "order" under section 46110, as numerous courts have recognized. *See Gilmore*, 435 F.3d at 1130-31, 1133 & n.8 (finding non-public security directive constituted an "order" which did not have to be provided to plaintiff); *Green v. TSA*, 351 F. Supp. 2d 1119, 1127 (W.D. Wash. 2005) (hereinafter *Green v. TSA*) (same). Similarly, that plaintiff "[was] not [a party] to the proceedings from which the order[] . . . arose" also "do[es] not matter," because "[s]tatutory review is . . . an adequate means of reviewing [plaintiff's] allegations." *City of Rochester*, 603 F.2d at 936. Consequently, the court in *Scherfen v. DHS*, No. 08-1554, 2010 WL 456784 (M.D. Pa. Feb. 2, 2010) found that TSA's security directive, which established the security protocols for individuals on the No-Fly and Selectee lists, as well as the agency's review of an individual's status vis-à-vis those lists, each constituted an "order" under

_____

[12] As the *EPIC* case demonstrates, TSA's issuance of the Screening Checkpoint SOP has culminated in "an agency record" that is "adequate enough to support judicial review." *Green*, 981 F.2d at 519. The requisite record "need not be substantial so long as the agency's position is definitive and clearly expressed." *Aviators for Safe & Fairer Regulation, Inc.*, 221 F.3d at 225. Indeed, even a single letter has been found to suffice. *See San Diego Air Sports Ctr., Inc. v. FAA*, 887 F.2d 966, 969 (9th Cir.1989). A sufficient administrative record is clearly present here, in the form of the Screening Checkpoint SOP as well as other documents created and reviewed by TSA in connection with the SOP. Indeed, in response to the *EPIC* suit, defendants have filed a comprehensive administrative record concerning the development and deployment of AIT. *See EPIC*, Case No. 10-1157 (D.C. Cir.), Doc. No. 1274589 (amended certified index administrative record).

section 46110, notwithstanding the fact that plaintiffs did not have access to the actual security protocols and the agency did not disclose their status vis-à-vis the No-Fly or Selectee list. *Id.* at *10-11.

Indeed, the issuance of the Screening Checkpoint SOP bears a striking resemblance to other TSA and FAA actions which have been held, under similar circumstances, to constitute orders that are reviewable only in a court of appeals. For example, in *Gilmore v. Gonzales*, the plaintiff raised a constitutional challenge to TSA's passenger identification policy, which had required airline passengers to present identification or be subjected to a more intensive "selectee" screening search. 435 F.3d at 1130. The Ninth Circuit held that the identification policy – which was issued via a non-public security directive and enforced upon passengers by airport security personnel – was a final order within the meaning of section 46110 because it "prevent[ed] from air travel those who, like Gilmore, refused to comply with the identification policy," and therefore had a "'direct and immediate' effect" on the plaintiff. *Id.* at 1133.[13]  *See also Scherfen*, 2010 WL 456784, at *10-11 (finding that district court lacked subject matter jurisdiction, pursuant to section 46110, to review TSA security directive regarding No-Fly and Selectee lists and alleged placement of individuals on those lists); *Green v. TSA*, 351 F. Supp. 2d at 1127-28 (finding that section 46110 precluded the district court from reviewing plaintiffs' challenge to the non-public security directives which required airport screeners to take specific security measures with respect to persons identified on TSA's No-Fly or Selectee lists).

Likewise, in *Thomson v. Stone*, No. 05-70825, 2006 WL 770449 (E.D. Mich. Mar. 27,

---

[13] The *Gilmore* court utilized the authority in 28 U.S.C. § 1631 to transfer to itself plaintiff's case – which had initially been filed in the district court and dismissed with prejudice – treating the matter as if it had been initially filed in the court of appeals. *See Gilmore*, 435 F.3d at 1133-34. This same provision would apply to a transfer of this case from this Court to the court of appeals.

2006), where an airline passenger raised a Fourth Amendment challenge to the pat-down procedures used to screen her because her prosthetic leg routinely set off airport metal detectors, the district court held that it lacked jurisdiction. 2006 WL 770449, at *6. The court in *Thomson* found that the plaintiff's claims necessarily involved TSA's Standard Operating Procedure for screening passengers with disabilities, which the court concluded was only reviewable by a court of appeals under section 46110. *Id.* at *3, *6. Similarly, in *Sima Products Corporation v. McLucas*, 612 F.2d 309 (7th Cir. 1980), the court of appeals held that it had exclusive jurisdiction to review a challenge to an informal FAA rule concerning the use of X-ray devices for inspecting carry-on baggage. *Id.* at 312-15; *see also Zoltanski v. FAA*, 372 F.3d 1195, 1196 (10th Cir. 2004) (appeals court exercised jurisdiction under section 46110 over plaintiff's challenge to a monetary fine for failing to comply with certain screening procedures including submitting personal property for explosive detection screening).

Just like the security directives and screening requirements at issue in the aforementioned cases – which were all final policies that imposed binding requirements or conditions on airline passengers – the Screening Checkpoint SOP represents a definitive statement of agency policy that, together with 49 C.F.R. §§ 1540.105 and 1540.107, affects the rights of travelers who may not fly by commercial airline if they do not abide by the requirements it imposes. Accordingly, the SOP is a final order of TSA that is only reviewable under section 46110.

Indeed, at least one district court has already expressed its view that a nearly identical challenge to the same Screening Checkpoint SOP should be made in the first instance in the court of appeals. In *Blitz v. Napolitano*, the district court denied the plaintiffs' motion for a temporary restraining order and preliminary injunction challenging TSA's use of AIT scanners and pat-downs under the Fourth Amendment, in large part because the court found that it likely lacked jurisdiction

under section 46110. *See* Docket # 17-1 (*Blitz v. Napolitano*, Case No. 10-930 (M.D.N.C. Dec. 10, 2010), Transcript of Oral Proceeding) at 52-62. Specifically, the Court found that "it is, at best, unclear at this point whether this Court has jurisdiction to adjudicate plaintiffs' claims. When I say 'at best,' what I mean by that is it seems to me I do not[,]" and that "[t]he [Screening Checkpoint] SOP on this record appears to meet the criteria set forth in Section 46110(a)[.]" *Id.* at 53, 54.[14]

Although the jurisdictional inquiry should be wholly resolved based on the SOP's status under section 46110, even if this Court were to find that the Complaint somehow does not challenge the SOP directly, it would still lack jurisdiction over plaintiff's claims because they are "inescapably intertwined" with the SOP. Statutes "such as Section 46110(c) that vest judicial review of administrative orders exclusively in the court of appeals also preclude district courts from hearing claims that are 'inescapably intertwined' with the review of such orders." *Merritt v. Shuttle, Inc.*, 245 F.3d 182, 187 (2d Cir. 2001). *See also Green*, 981 F.2d at 521 (plaintiff could not bypass the exclusive review provisions of section 46110's predecessor because merits of his *Bivens* claim were inextricably intertwined with review of FAA's order). A claim is "inescapably intertwined" with an "order" under exclusive jurisdiction of the appeals courts if the alleged injury underlying the claim stems from such an order. *Merritt*, 245 F.3d at 187 (citing *City of Tacoma v. Taxpayers of Tacoma*, 357 U.S. 320, 336, 339 (1958)); *see Gilmore*, 435 F.3d at 1133 n.9; *Green*, 981 F.2d at 521; *Scherfen*, 2010 WL 456784, at *11-13.[15]

_____

[14] The district court in *Blitz* also found that the plaintiffs did not show that they "are likely to succeed on the merits with respect to the reasonableness of the challenged screening procedures." *See* Docket # 17-1 at 57.

[15] In *Ibrahim v. DHS*, 538 F.3d 1250 (9th Cir. 2008), the court reaffirmed its conclusion in *Gilmore*, holding that "section 46110 stripped the district court of the jurisdiction it would otherwise have had over Ibrahim's APA claim regarding [TSA's] policies and procedures implementing the No-Fly List." *Id.* at 1257. The court, however, questioned the applicability of the "inescapably

Here, the Complaint's substantive claims are directed at the TSA screening policies that are embodied and implemented in the Screening Checkpoint SOP. *See* Compl. ¶¶ 9-15 (challenging TSA procedures implementing AIT and the revised pat-downs, as well as TSA's failure to permit passengers to opt out of these procedures). Thus, although the Complaint does not mention the SOP specifically, it necessarily challenges the SOP. Any of the alleged constitutional injuries that plaintiff has asserted – from having to go through the AIT scanner, to being subjected to a pat-down, and any consequences that he claims may result – would not have existed but for the issuance of the SOP. Therefore, if not a direct challenge to the SOP itself, these claims are inescapably intertwined with the SOP.

Accordingly, to the extent that plaintiff seeks to maintain this action in district court, it constitutes a collateral attack on the SOP that is not permitted by section 46110. When an exclusive review statute such as section 46110 applies to agency orders, collateral attacks against such orders in a forum other than the one designated by the statute are impermissible. *See Green*, 981 F.2d at 521 (finding that a *Bivens* claim "constitute[d] an impermissible collateral challenge to the agency order, and [that] the district court lack[ed] subject matter jurisdiction."); *Gaunce v. deVincentis*, 708 F.2d 1290, 1292-93 (7th Cir. 1983) (finding that constitutional challenge in district court to FAA order was impermissible collateral attack).

That plaintiff characterizes his claims as a constitutional challenge, rather than a petition for

---

intertwined" doctrine to actions by agencies not covered under section 46110. *Id.* at 1254-56 (finding that the No-Fly list itself – as opposed to the TSA security directive which compels airlines to screen passengers against the list – was not intertwined with an "order" for purposes of section 46110, because the list was not created by TSA, but rather by a component of the FBI, which is not an agency named in section 46110). *But see Scherfen*, 2010 WL 456784, at *12-13 (disagreeing with *Ibrahim* and finding that even the No-Fly list is intertwined with TSA orders and thus only reviewable by the court of appeals).

review of the SOP, is immaterial, because the phrasing of a Complaint cannot "avoid the bar of a clearly applicable jurisdictional statute." *United Transp. Union v. Norfolk & Western R. Co.*, 822 F.2d 1114, 1120 (D.C. Cir. 1987) (noting that to hold otherwise would enable a "complainant's own description of its theory to determine the forum with jurisdiction"). Moreover, the claims plaintiff raises – constitutional challenges to the SOP – and the relief he seeks – enjoining TSA from using AIT, pat-downs, or both – are within the jurisdiction of the court of appeals. As a consequence, plaintiff cannot bring them here. *Compare Beins v. United States*, 695 F.2d 591, 597-98 (D.C. Cir. 1982) (finding district court jurisdiction over FTCA claims for damages based on the FAA's allegedly negligent denial of certain airman medical certificates, on the grounds that a court of appeals would not have jurisdiction over negligence claims and could not provide damages) *with Thunder Basin Coal Co. v. Reich*, 510 U.S. 200, 213-15 (1994) (finding jurisdiction in the circuit courts where the "petitioner's statutory and constitutional claims here can be meaningfully addressed in the Court of appeals").

Moreover, permitting constitutional challenges to TSA orders to proceed in district court would defeat Congress's purpose in enacting section 46110. *City of Rochester*, 603 F.2d at 936 ("policy behind having a special review procedure in the first place similarly disfavors bifurcating jurisdiction over various substantive grounds between district court and the court of appeals."). Thus, it has been widely held that section 46110 directs, to the court of appeals, exactly the sorts of constitutional claims at issue here, including, most recently, nearly identical claims to those alleged by plaintiffs. *See* Docket # 17-1 (*Blitz* Transcript) at 53-54 (Fourth Amendment challenge to AIT and pat-downs); *see also Gilmore*, 435 F.3d at 1130 (Fourth Amendment and right to travel

-18-

claims);[16] *Gaunce*, 708 F.2d at 1293 (due process challenge to FAA procedures); *Nelson v. DHS*, No. 06-0050, 2007 WL 1655344, at *2 (W.D. Va. June 7, 2007) (constitutional challenge to TSA requirement that drivers licensed to transport hazardous materials must be fingerprinted); *Thomson*, 2006 WL 770449, at *6 (Fourth Amendment challenge to TSA screening procedures); *Green v. TSA*, 351 F. Supp. 2d at 1127 (Fourth and Fifth Amendment challenges to TSA No-Fly list).

In sum, plaintiff clearly challenges an order that was issued by the Administrator of TSA concerning aviation and security matters, and as such, his challenge can only be heard in the court of appeals pursuant to section 46110. Even if there was any ambiguity on this point – and defendants contend there is none – the ambiguity must be resolved "in favor of review by a court of appeals." *Suburban O'Hare Comm'n v. Dole*, 787 F.2d 186, 192 (7th Cir. 1986); *see Clark v. CFTC*, 170 F.3d 110, 114 (2d Cir. 1999). This Court accordingly lacks subject matter jurisdiction, and the Complaint should be dismissed.[17]

---

[16] In a Ninth Circuit case predating *Gilmore*, the court found that a district court may retain jurisdiction over a *Bivens* action raising a broad due process challenge to the FAA's revocation of an airline mechanic certificate, notwithstanding section 1486 (which preceded section 46110, *see supra* note 8). *See Mace v. Skinner*, 34 F.3d 854, 858 (9th Cir. 1994) (noting, *inter alia*, that the remedy of damages requested by the *Bivens* claim was not available under section 1486). In so doing, however, the Court expressly disagreed with the Seventh Circuit's opinion in *Gaunce v. deVincentis*, 708 F.2d 1290, 1293 (7th Cir. 1983), on which the Eleventh Circuit relied in *Green*. As such, *Mace* is not persuasive authority in this circuit. Moreover, in *Gilmore*, the Ninth Circuit clarified that even as to constitutional challenges, a district court is divested of jurisdiction if the challenge is inescapably intertwined with a review of the procedures and merits of an agency order, *see Gilmore*, 435 F.3d at 1133 n.9, as is the case here. Here, plaintiff is not bringing a *Bivens* claim for monetary relief. *See supra* note 5.

[17] As this Court lacks jurisdiction under section 46110, it would be for the court of appeals in the first instance to review all other matters, including standing. *Cf. Gilmore*, 435 F.3d 1125, 1131-34 (court of appeals considered whether plaintiff had standing only after satisfying itself that it had jurisdiction under section 46110); *High Country Citizens Alliance v. Clarke*, 454 F.3d 1177, 1193 (10th Cir. 2006). Because plaintiff seeks "forward-looking" injunctive relief, he would face a high hurdle in showing that any injury to himself is "certainly impending." *Whitmore v. Arkansas*, 495 U.S. 149, 158 (1990) (allegations of possible future injury are not sufficient); *City of Los*

-19-

## CONCLUSION

For the foregoing reasons, plaintiff's Complaint should be dismissed.

Dated: February 22, 2011                      Respectfully submitted,

                                        TONY WEST
Assistant Attorney General

WILFREDO A. FERRER
United States Attorney

SANDRA M. SCHRAIBMAN
Assistant Branch Director
Civil Division, Federal Program Branch

*/s/   **Carlotta P. Wells***
CARLOTTA P. WELLS
JESSE GRAUMAN
JOSEPH W. MEAD
U.S. Department of Justice
Civil Division, Federal Programs Branch
P.O. Box 883
Washington, D.C. 20044
(202) 514-4522 (telephone)

Attorneys for Defendant

---

*Angeles v. Lyons*, 461 U.S. 95, 102 (1983) (injuries suffered in the past do not confer standing for injunctive relief).  Here, there is no allegation that plaintiff has a definite intention to travel in the future.  *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 564 (1992) (rejecting standing premised on an alleged intent to travel in the future "without any description of concrete plans, or indeed even any specification of when the some day will be"); *Bowen v. First Family Financial Services, Inc.*, 233 F.3d 1331, 1340 (11th Cir. 2000) ("a 'perhaps' or 'maybe' chance of injury is insufficient" to confer standing).  Further, there is nothing more than a possibility that plaintiff will be subjected to the allegedly injurious screening methods in the imminent future, as AIT scanners are not deployed to all airports, and even where deployed, AIT scanners are not used in all screening lanes (although the number is constantly growing).  *See* Pistole Dec. ¶¶ 26-27.  Nor  has plaintiff amended his Complaint to cite instances in which he has been subject to AIT or pat-downs.  In addition, plaintiff does not have standing to raise claims on behalf of third parties.  *Lyons*, 461 U.S. at 105.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 10-24106-Civ-Cooke

| | |
|---|---|
| Jonathan Corbett, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| United States of America, | ) |
| | ) |
| Defendant. | ) |
| _____ | ) |

**Certificate of Service**

I hereby certify that on February 22, 2011, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

s/Carlotta P. Wells
Carlotta P. Wells

**SERVICE LIST**
**Corbett versus United States**
**Case No. 10-24106-Civ-Cooke**
**United States District Court, Southern District of Florida**

Jonathan Corbet
407 Lincoln Road
#11A
Miami Beach, FL 33139
Telephone: (646) 316-4524
Pro se
Served by first-class mail to the above address and by e-mail to jcorbett@fourtentech.com.